IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-00029-BO-RN

| | |
|---|---|
| GB GROUP, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BULLDOG NATIONAL RISK | ) |
| RETENTION GROUP, INC. f/k/a | ) |
| AMERICAN TRANSPORTATION | )     O R D E R |
| GROUP INSURANCE RISK RETENTION | ) |
| GROUP, INC.; PALMETTO | ) |
| CONSULTING OF COLUMBIA, LLC; | ) |
| MICHAEL DAVID HUNTER; and | ) |
| MATTHEW ALAN HOLYCROSS, | ) |
| | ) |
| Defendants. | ) |

This cause comes before the Court on defendants' motion to exclude plaintiff's expert, plaintiff's motion for partial summary judgment, and defendants' motion for summary judgment. The appropriate responses and replies have been filed and a hearing on the motions was held before the undersigned on October 1, 2025, at Raleigh, North Carolina. In this posture, the motions are ripe for disposition. For the reasons that follow, defendants' motion to exclude plaintiff's expert [DE 71] is denied and the summary judgment motions [DE 74]; [DE 78] are granted in part and denied in part. This matter will be set for trial during the Court's March 2, 2026, term at Elizabeth City.

BACKGROUND

This action arises from a dispute about the payment of service fees by Bulldog National Risk Retention Group ("Bulldog) to plaintiff GB Group. The dispute centers on a Service

Agreement between GB Group and Bulldog and an Addendum thereto entered into in July 2018 and August 2020. The claims remaining for adjudication at this stage are GB Group's claims against defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment (in the alternative), and request for an accounting and Bulldog's counterclaim for breach of the implied covenant of good faith and fair dealing as to confidentiality provisions in the Service Agreement. GB Group now seeks summary judgment in its favor on its breach of contract claim and Bulldog's good faith and fair dealing counterclaim. Bulldog and the remaining defendants seek summary judgment in their favor as to all of GB Group's claims.

The following facts are undisputed. *See* [DE 79]; [DE 88]; [DE 75]; [DE 91]. GB Group is a claims and risk management company which specializes in providing third-party administration services in property and casualty insurance. [DE 79] & [DE 88] ¶ 1. Bulldog is a North Carolina risk retention group which was established it 2018. Bulldog provides insurance to small, independent, and intermediate and long-haul trucker clients. *Id.* ¶ 2. Defendant Michael Hunter is the current president of Bulldog and defendant Matthew Holycross is the treasurer of Bulldog. *Id.* ¶¶ 3-4. All of Bulldog's services are provided by third-party vendors. *Id.* ¶ 5. Defendant Holycross owns defendant Palmetto Consulting of Columbia (Palmetto), and Palmetto is Bulldog's current captive manager. *Id.* ¶ 6.

On July 2, 2018, GB Group entered into a Service Agreement with Bulldog to provide policy service, risk, and claims management for Bulldog. *Id.* ¶ 8. GB Group would be paid as a percentage of gross written premium (GWP) of policies written by Bulldog in accordance with an attached fee schedule. *Id.* ¶ 11. The fee schedule required Bulldog to pay GB Group 6.75% of GWP for policies written between the inception of the Service Agreement and December 31, 2019, and 7.75% of GWP for policies written between January 1, 2020, and December 31, 2021. *Id.* ¶

2

13. The parties dispute the meaning of an additional provision stating "For frequency of over 25%, an additional per claim file fee of $800 will be assessed." *Id.* ¶ 14.

In July 2018, Bulldog began writing policies through MVT Insurance Services, Inc. (MVT), a California licensed property and casualty insurance agency. *Id.* ¶¶ 16-17. MVT served as Bulldog's managing general agent and operator. *Id.* ¶ 18. Under MVT, Bulldog failed to maintain a 2:1 ratio of net written premium to surplus in violation of North Carolina insurance requirements, and in late 2019 it entered into a voluntary settlement agreement with the North Carolina Department of Insurance. *Id.* ¶ 19. Bulldog subsequently hired Michael Hunter in December 2019 as a consultant to assist with compliance and operations, and Hunter uncovered substantial corporate governance issues as well as wrongdoing by MVT. *Id.* ¶¶ 20-24.

In the months following December 2019, Bulldog underwent changes. First, in March 2020 Alterna resigned as Bulldog's captive manager and an April 3, 2020, board meeting resulted in the termination of MVT for cause, the termination of the then-current officers of Bulldog, with the exception of Hunter, Hunter was elected and appointed acting President and Secretary of Bulldog, Holycross was elected assistant Secretary and Treasurer of Bulldog, Palmetto was reaffirmed as Bulldog's captive manager, and GB Group was reaffirmed as Bulldog's Claims Administrator. [DE 75]&[DE 91] ¶¶ 21-23. Bulldog has no salaried employees and it pays only its service providers. *Id.* ¶¶ 24-25. It is disputed whether Hunter or Holycross are service providers for Bulldog. [DE 91] ¶ 26.

On April 14, 2020, Bulldog and GB Group entered into an Addendum to the Service Agreement. Neither Hunter, Holycross, nor Palmetto are signatories to the Addendum. [DE 75] & [DE 91] ¶¶ 32-34. The parties dispute when GB Group first raised issues regarding payment with

3

Bulldog and whether and how much is owed to GB Group. GB Group terminated its Service Agreement with Bulldog on July 20, 2021, effective October 1, 2021. *Id.* ¶ 51.

## DISCUSSION

I. Defendants' motion to exclude plaintiff's expert

The Court considers first defendants' motion to exclude the expert opinion of Mr. Konstantin Sakherzon pursuant to Rule 702 of the Federal Rules of Civil Procedure and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). First, defendants argue that Sakherzon's opinion as to the liability of Hunter, Holycross, and Palmetto has no basis in law or fact. Second, defendants argue that Sakherzon's opinion as to damages is speculative, untrustworthy, and fails to rest on sufficient data or facts. Third, defendants argue that Sakherzon's opinions as to the calculations related to the frequency and minimum premium conditions should be excluded as these opinions are based on Sakherzon's own interpretation of the Service Agreement and Addendum.

Rule 702 of the Federal Rules of Civil Procedure provides that expert testimony is appropriate "when it will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. A witness who is qualified as an expert may be permitted to testify where "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." *Id.*

> Under Rule 702, a district court must ensure that the expert is qualified and that the expert's testimony is both relevant and reliable. In performing this gatekeeping role, a district court is not intended to serve as a replacement for the adversary system,

4

and consequently, the rejection of expert testimony is the exception rather than the rule.

*United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019) (internal quotations and citations omitted).

First, the Court rejects defendants' argument that Sakherzon has attempted to offer an expert opinion as to the liability of Hunter, Holycross, or Palmetto.

Second, the Court rejects defendants' arguments as to the reliability of Sakherzon's opinions, both as to damages calculations and opinions as to calculations related to the frequency and minimum premium conditions.[1] GB Group's fees were determined by calculating a percentage of all GWP written by Bulldog in accordance with the fee schedule attached to the Service Agreement. Later, the Addendum changed how GB Group's fees were calculated. This should be a simple issue, but the premium data generated while MVP was managing Bulldog was unreliable. Specifically, prior to its termination, MVP oversaw Bulldog's policy database, Quickbase, which was used to identify and calculate GB Group's fees. However, later audits determined that the premium records in Quickbase were inadequate and inaccurate.

Accordingly, Sakherzon performed three damages calculations for his report. The first is based on the "raw" data which Sakherzon assumes for the purposes of that calculation is accurate. The second and third calculations attempt to remedy and account for the inaccuracies in defendants' raw data. The Court determines that such an approach does not render Sakherzon's calculations as unreliable so as to render them inadmissible under Rule 702. In circumstances where actual data is missing or unreliable, courts permit parties to "rely on reliable estimates[.]"

---

[1] Defendants do not appear to challenge Sakherzon's qualifications as an expert. Sakherzon is an Associate of the Casualty Actuarial Society, a Member of the American Academy of Actuarials, and is being proffered by GB Group as an expert in the field of actuarial services.

5

*Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 307 (D.D.C. 2018). Indeed, "[t]rained experts commonly extrapolate from existing data." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Rather, the Court finds that defendants' objections to Sakherzon's calculations go to weight, rather than admissibility, and thus are properly reserved for cross-examination. "[Q]uestions regarding the factual underpinnings of the expert witness' opinion affect the weight and credibility" of the witness' assessment, "not its admissibility." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017) (citation omitted).

Exclusion of Sakherzon's opinion is further not warranted based the inclusion of any legal opinions. Damages experts are entitled to assume liability when rendering their opinions. *See, e.g., Vir2us, Inc. v. Sophos Inc.*, No. 2:19CV18, 2025 WL 299392, at *8 (E.D. Va. Jan. 24, 2025). Here, Sakherzon does not attempt to opine as to the proper interpretation of the Service Agreement or the Addendum. *See Forrest Creek Assocs., Ltd. v. McLean Sav. & Loan Ass'n*, 831 F.2d 1238, 1242 (4th Cir. 1987) (expert properly excluded where testimony proffered was "for the purpose of interpreting" a contract clause). Moreover, the Court agrees with GB Group that where Sakherzon's report presumes that the Service Agreement and Addendum are interpreted in a certain way, his opinion as to the resulting damage is limited to that interpretation of the agreements. In other words, GB Group's expert report does not attempt to "draw[] a legal conclusion by applying law to the facts[,]" which would render his opinion inadmissible. *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006).

Accordingly, defendants' motion to exclude GB Group's expert is denied.

II. Motions for summary judgment

The Court next considers the cross-motions for summary judgment.

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

When deciding cross-motions for summary judgment, a court considers each motion separately and resolves all factual disputes and competing inferences in the light most favorable to the opposing party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). The court must ask "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251.

A. *Plaintiff's motion for partial summary judgment*

7

GB Group seeks entry of summary judgment in its favor on Bulldog's counterclaim for breach of the covenant of good faith and fair dealing as well as judgment in its favor on its own breach of contract claim. The Court determines that GB Group is entitled to summary judgment on Bulldog's counterclaim, but that genuine issues of material fact preclude entry of summary judgment on its breach of contract claim.

Bulldog alleges that GB Group breached North Carolina's implied covenant of good faith and fair dealing when it improperly accessed underwriting and premium information about Bulldog's insureds and then provided the improperly accessed information to one of Bulldog's competitors, Star Mutual. Bulldog's counterclaim concerns access it provided to GB Group to electronic information held by Bulldog about its insureds. Bulldog alleges that GB Group accessed information of insureds whose policies were not subject to claims administration and/or adjudication under the Service Agreement, and thus GB Group had no legitimate business reason to access the information. *See* [DE 31] at 11-12.[2] The Service Agreement prohibits the disclosure of Bulldog's confidential information for purposes other than monitoring or handling claims or claim activity, and the parties further agreed not to share each other's confidential information for their benefit. *See* [DE 82-17] at 3-4.

Under North Carolina law, "every contract [contains] an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefit of the agreement." *Bicycle Transit Auth., Inc. v. Bell*, 314 N.C. 219, 228 (1985) (citation omitted). North Carolina courts treat a "claim for the implied covenant of good faith and fair dealing" as "part and parcel" of a "claim for breach of contract" when both are premised on the same acts. *Cordaro v. Harrington Bank. FSB*, 260 N.C. App. 26, 38–39 (2018).

---

[2] Unless otherwise indicated, page references are to the CM/ECF page number.

There is no dispute that the Service Agreement permitted GB Group access to the electronic claim records. The Service Agreement prohibited, however, the disclosure of information contained in the electronic claim records for purposes other than handling or monitoring a claim on behalf of Bulldog. [DE 82-17] Art. V, ¶¶ A-D. But the summary judgment record lacks evidence which would create a genuine issue of material fact as to whether GB Group improperly disclosed any of Bulldog's claim information. Defendants rely on evidence which shows that GB Group accessed Bulldog policy files. *See* [DE 89-3]. But, as GB Group argues, showing access is not the same as showing disclosure. Rather, Hunter testified that he had no information which would connect the list of electronic files accessed by GB Group with any disclosure or evidence that any insured's whose file was accessed left Bulldog and went to Star Mutual. *See* [DE 82-9] at 39-40; 41. Though Hunter testified that he saw one "federal filing" which indicated that a former Bulldog insured went to Star Mutual, nothing in his testimony is sufficient to create a genuine issue of fact as to whether that insured's change to Star Mutual was because of or related to any alleged disclosure by GB Group of Bulldog's confidential information.

In sum, defendants have failed to create a genuine issue of material fact as to whether GB Group breached the implied covenant of good and fair dealing, and GB Group is entitled to summary judgment in its favor on Bulldog's remaining counterclaim.

There is, however, a genuine issue of material fact as to GB Group's breach of contract claim, and summary judgment on this claim is denied. Under North Carolina law, a party alleging a claim for breach of contract must establish "(1) the existence of a valid contract and (2) a breach of the terms of that contract." *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 797 (E.D.N.C. 2019). The existence of a valid contract between GB Group and Bulldog is

9

Case 5:23-cv-00029-BO-RN   Document 101   Filed 01/08/26   Page 9 of 13

undisputed. Whether the Service Agreement and Addendum were breached by Bulldog is in dispute, and summary judgment in either GB Group's or Bulldog's favor is not warranted.

B. *Defendants' motion for summary judgment*

Defendants seek entry of summary judgment in their favor on all claims. Defendants first argue that Hunter, Holycross, and Palmetto are not signatories to the Service Agreement or the Addendum and thus are not proper defendants as to GB Group's breach of contract claim. It is undisputed that Hunter, Holycross, and Palmetto are not signatories to the Service Agreement and Addendum. GB Group agrees that because its veil piercing theory has been dismissed, its breach of contract claim against Hunter, Holycross, and Palmetto cedes in favor of its unjust enrichment claim against them. [DE 93] at 2 n.1. Accordingly, the breach of contract claim against Hunter, Holycross, and Palmetto is dismissed.

GB Group also agrees that its unjust enrichment claim against Bulldog cedes to its breach of contract claim against Bulldog, as no party disputes the validity of the Service Agreement or the Addendum. *See Great Am. Emu Co., LLC v. E.J. McKernan Co.*, 509 F. Supp. 3d 528, 538 (E.D.N.C. 2020) ("Where a breach of contract is asserted, the contract governs the claim and the law does not permit assertion of an unjust enrichment claim on the same basis."). Accordingly, GB Group's unjust enrichment claim against Bulldog is dismissed.

Defendants seek summary judgment in their favor on GB Group's unjust enrichment claim against Hunter, Holycross, and Palmetto. North Carolina law implies "a promise to pay a fair compensation" "where services are rendered and expenditures made by one party to or for the benefit of another, without an express contract to pay." *Krawiec v. Manly*, 370 N.C. 602, 615 (2018) (quoting *Atl. Coast Line R. Co. v. State Highway Comm'n*, 268 N.C. 92, 95 (1966)). Here, defendants argue that Hunter and Holycross did not receive a benefit from GB Group, because

10

they did not receive any commission from Bulldog. It is undisputed that Bulldog did not pay a salary to Hunter or Holycross as employees of Bulldog and that Bulldog only paid service providers. Holycross receives no compensation for his service as an officer of Bulldog, but receives compensation through Palmetto, Bulldog's captive manager and service provider, of which Holycross is the managing member and owner. The record is conflicted, however, as to whether Hunter was a service provider. *Compare* [DE 76-3] ¶ 21 *with* [DE 92-3] at 8. However, even assuming that Hunter was a service provider, he was paid in his role as a consultant for Bulldog, not as an officer or employee of Bulldog. Accordingly, the question is whether Bulldog's service providers can be unjustly enriched if Bulldog fails to pay compensation allegedly owed to GB Group for services GB Group provided to Bulldog. The Court agrees with defendants that they cannot. "[W]here there is a contract between two persons for the furnishing of goods or services to a third, the latter is not liable on an implied contract simply because he has received such services or goods." *Bryson v. Hutton*, 41 N.C. App. 575, 577 (1979). In other words, Hunter as consultant and Palmetto provided services to Bulldog, for which they were compensated. GB Group also provided services to Bulldog, and any dispute between GB Group and Bulldog about the proper compensation does not implicate Bulldog's other service providers. GB Group argues that the fact that it has not been paid appropriately is attributable at least in part to Palmetto as captive manager, which controls Bulldog and which is owned and operated by Holycross. But that, in essence, appears to be another attempt to pierce the corporate veil, which theory the Court has already dismissed. Accordingly, Hunter, Holycross, and Palmetto are entitled to summary judgment or. GB Group's unjust enrichment claim.

Defendants also seek summary judgment in their favor on GB Group's claim for breach of the implied duty of good faith and fair dealing. Their only argument is that this claim fails as a

11

matter of law because GB Group's breach of contract claim fails. *See Michael Borovsky Goldsmith LLC v. Jewelers Mut. Ins. Co.*, 359 F. Supp. 3d 306, 313 (E.D.N.C. 2019). The Court has denied entry of summary judgment in either party's favor on GB Group's breach of contract claim. It thus denies defendants' motion for summary judgment on this claim.

Finally, as there remains dispute of material fact as to GB Group's plaintiff's breach of contract claim, defendants are not entitled to summary judgment on GB Group's equitable claim for an accounting. *See Mkt. Choice, Inc. v. New England Coffee Co.*, No. 5:08-CV-90, 2009 WL 2590651, at *12 (W.D.N.C. Aug. 18, 2009).

## CONCLUSION

Accordingly, for the foregoing reasons, defendants' motion to exclude plaintiff's expert [DE 71] is DENIED. GB Group's motion for partial summary judgment [DE 78] is GRANTED IN PART and DENIED IN PART. Defendants' motion for summary judgment [DE 74] is GRANTED IN PART and DENIED IN PART. Summary judgment is entered in GB Group's favor on Bulldog's remaining counterclaim for breach of the implied duty of good faith and fair dealing. Defendants Hunter, Holycross, and Palmetto Consulting are entitled to summary judgment in their favor on GB Group's claim for unjust enrichment. GB Group's claim for breach of contract against Hunter, Holycross, and Palmetto is DISMISSED. GB Group's claim for unjust enrichment against Bulldog is also DISMISSED. Remaining for trial is GB Group's breach of contract claim against Bulldog, GB Group's claim for breach of the implied duty of good faith and fair dealing against all defendants, and its claim for an accounting.

The jury trial will commence on Monday, March 2, 2026, at 10:00 a.m. at the United States Courthouse at Elizabeth City, North Carolina. The case is REFERRED to United States Magistrate Judge Robert Numbers for pretrial conference. The case is further REFERRED to United States

Magistrate Judge Numbers to conduct a court-hosted settlement conference not later than February 16, 2026.

SO ORDERED, this __8__ day of January 2026.

                                               *Terrence Boyle*
                                               TERRENCE W. BOYLE
                                               UNITED STATES DISTRICT JUDGE